Hilda Stokes, Appellant, v. Carl A. Carlson, Respondent, No. 41862—240 S. W. (2d) 132.

Division One, May 14, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, June 11, 1951.

*William Goodman, Arthur C. Popham* and *Sam Mandell* for appellant; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

94

*Douglas Stripp* and *James C. Logan* for respondent; *Watson, Ess, Whittaker, Marshall & Enggas* of counsel.

LOZIER, C.—This is a suit for $40,000 damages for personal injuries sustained by the driver of an automobile as a result of the alleged negligence of the defendant, owner of and a passenger in the car. Plaintiff-driver appeals from an adverse judgment based upon a verdict in favor of the defendant-owner-passenger.

Plaintiff-appellant assigns error in the giving of two instructions, in the admission of certain evidence, in the remarks of the trial

judge in the presence of the jury and in the misconduct of a juror in concealing his qualifications to serve. However, as we agree with defendant-respondent that plaintiff failed to make a submissible case, we need not rule the errors assigned by plaintiff.

Plaintiff testified that: she and her husband had known defendant for a number of years; they had previously taken automobile trips with him, on all of which defendant always requested one of them to drive; on October 11, 1944, defendant stopped at the restaurant where she worked and inquired if her husband could drive him to Springfield, Mo.; she telephoned Stokes who told her that he could the next day; on October 12, 1944, defendant and Charles O. Davis, a friend of both defendant and the Stokeses, met plaintiff and her husband at the restaurant; the four started out, Stokes driving, plaintiff in the other front seat, defendant behind Stokes and Davis behind plaintiff; the car was a coach or two-door sedan; the backs of the two front seats were hinged at the bottom and could be tilted forward; the group stopped for dinner at a cafe on the highway east of Kansas City; as they left the cafe, about 7:30 p. m., defendant handed plaintiff the car keys and asked her to drive; she thereafter drove; Stokes was in the other front seat and defendant and Davis were in the rear seat, defendant behind her and Davis behind Stokes; they stopped at a filling station at Clinton where Stokes and Davis got out of the car and went to the rest room; defendant was asleep; Stokes tried to wake him and he mumbled something; "somebody even talked about whether you should wake him and somebody else said, 'No, let him sleep.'" Stokes then took the right rear seat and Davis the other front seat; the surface of the highway out of Clinton was loose gravel with a "high crown" of loose gravel in the center; the accident occurred about midnight on a "straightway" about 10 or 12 miles northwest of Warsaw or 20 or 22 miles southeast of Clinton; she was driving at about 35 miles per hour; she lost control of the car, it went off the road, turned over and she sustained serious personal injuries.

According to plaintiff, as she was driving along, the back of the driver's seat was suddenly pushed forward against her back with pressure, causing her chest to hit the steering wheel; she was stunned and shocked and lost control of the car; it went off the road and turned over; when the back of the seat started to press against her she smelled the odor of a dead cigar, which she had not previously smelled, in close proximity to her.

Plaintiff said that defendant "was definitely asleep at Clinton." She could not and did not turn around and observe him. "The last time I had seen him he was sound asleep. * * * He was pretty drowsy all the way. * * * We were all singing and talking except Mr. Carlson." Plaintiff heard no talking in the back seat immediately prior to the accident, but a short time before, that she

heard Stokes say something (to defendant she thought, but was not sure) and heard defendant "say something—mumble something, some muttering of some sort." She did not remember that "anybody was conversing as if awake immediately before I felt the back of the seat move. * * * The hum of the motor and the noise of the car traveling on the gravel road made it difficult for me to hear anything that went on in the back seat."

Stokes died before trial time. Plaintiff introduced his deposition in which he testified that: he had frequently driven defendant's car before; that plaintiff liked to drive and customarily drove their own car; that at the Clinton stop defendant was asleep in the back seat and was asleep when they left Clinton; he (Stokes) was "definitely awake at the time of the accident"; after leaving Clinton defendant would "wake up and maybe say something and then go to sleep for a little while. * * * The last time I noticed Mr. Carlson his head was nodding, and I didn't pay too much attention, but the next thing I do remember, he seemed to lean forward and put his hand sort of out like, as if he might think he was driving a car or might try to say something. As he did, his elbow, arm or hand, I don't know exactly, it happened too fast, bumped the front of the seat and she lunged forward under the impact or weight. * * * She struggled with the wheel and at least twice rode back and forth over the ridge of gravel in the center of the road."

While the car was swerving back and forth across the road, Stokes said, defendant "grunted a little, but I didn't pay any attention to it. He had done that several times on the way out there. * * * He would kind of wake up and change his position, squirm around and doze back to sleep. I don't think he changed his position much. * * * It was cramped; just room for your legs and not too much room for your feet between the front seat and back; if you sit up pretty straight your knees are almost in contact with the back of the front seat."

According to Stokes: At time of accident, defendant "held up his hand and raised up about 6 inches out of the seat. * * * I do not know what he was doing, or whether he was asleep or half asleep or drowsy. It wasn't too light in the car and I couldn't say exactly, I couldn't even see his face. * * * I would say he pushed the seat forward about 6 or 8 inches. I helped him back into his seat, and from then on he was in his seat and did not say a word. I do not know what caused him to move forward. * * * Q. From before the time you reached Clinton on up to the time of 'the accident, Mr. Carlson seemed to you to be asleep or maybe just coming out of a—slightly awake and going back to sleep? A. That is the best description I can give you; yes, sir."

As defendant testified that he was sound asleep at the time of the accident, plaintiff's case was not strengthened by defendant's

evidence. Hence, in determining the submissibility of plaintiff's case, we do not consider defendant's evidence. See O'Dell v. Dean, 356 Mo. 861, 204 SW 2d 248.

Presumably, the evidence that plaintiff smelled a dead cigar odor at the time the seat was pushed was offered to suggest that defendant was awake. However, plaintiff offered no evidence whatever that during the trip defendant had smoked anything or at any time had had either a lighted or a dead cigar in his mouth. (The only other evidence as to defendant's smoking was his own testimony that he was a cigar smoker, that he had smoked on the trip but had not been smoking for an hour before he went to sleep, and that his cigar had gone out and he had thrown it away.)

Plaintiff's own evidence conclusively shows that if defendant pushed or shoved the back of the driver's seat, he did so while he was either sound asleep or nearly asleep or, put another way, not fully awake. His actions were purely involuntary and without any volition whatsoever.

We are not required to rule whether defendant's act in going to sleep, or his omitting to remain awake, was negligence. See Nelson v. Nygren, 259 N. Y. 71, 181 NE 52; and Walter v. State, 187 Misc. 1034, 65 N. Y. S. 2d 378. Plaintiff does not ask us to admonish *guest riders* in automobiles to "give not sleep to thine eyes, nor slumber to thine eyelids." Proverbs, 6:4.

The submissibility of plaintiff's case is involved in plaintiff's first assignment here. Instruction D, given at defendant's request, directed a verdict for defendant if the jury found that any movement of defendant's body ▮▮▮ which pushed the driver's seat forward "was made while he was asleep and his mind and will were in abeyance, or while he was so nearly asleep or so little awake that his mind and will were in abeyance." Plaintiff asserts the instruction "was prejudicially erroneous in declaring that defendant's acts so committed did not constitute negligence as a matter of law."

Counsel have briefed well this issue. Our own research confirms their agreement that this issue is one of first impression in the appellate courts of this state, and that only one other case approaches this one on the facts. That case is Lobert v. Pack, 337 Pa. 103, 9 Atl. 2d 365. The facts and the instruction involved are so strikingly similar to the facts and to Instruction D here that we feel justified in considering that opinion fully.

In that case, the woman-driver-plaintiff was driving a coach or two-door sedan owned by the defendant. The backs of the two front seats were movable. Defendant was riding on the rear seat behind plaintiff. The other seats were occupied by two other guest passengers. Defendant had been "kicking" the back of the driver's seat; had desisted at her request and had gone to sleep. Thereafter, according to plaintiff, while defendant was asleep, and while she

was driving between 30 and 35 miles per hour, "suddenly the back of the seat was forced against her, throwing her arms off the wheel and causing her to cross the road, crash into the culvert and upset." Defendant testified that after he fell asleep he knew nothing more until he awoke in the hospital; and that to his knowledge he neither replaced his feet on the back of the front seat nor pushed it again after her request to "quit kicking the seat."

Verdict was for defendant and plaintiff appealed. Her sole assignment of error was this portion of the trial court's charge to the jury: "If, on the other hand, you believe that the defendant was asleep, then the defendant would be entitled to a verdict because if he actually was asleep then he was unconscious of what occurred and could not have intentionally done anything to bring about the accident."

In affirming the judgment the supreme court said: "While plaintiff concedes that the alleged tortious conduct of defendant was involuntary and unintentional, it is her contention that defendant should be held liable for the injuries she sustained to the same extent as though he had been awake when the accident happened. * * * The question, therefore, is whether a person is responsible for a tort involuntarily committed while he was sleeping or unconscious.

"There is an absence of authoritative discussion in decisions or textbooks upon the subject of the relation of sleep to the law of negligence. However, one phase of the question has been considered by the courts in other jurisdictions where cases have arisen involving injuries caused by the driver of an automobile who fell asleep or became unconscious while operating the vehicle." Of these cases (involving sleep, paralysis, epileptic seizure or unconsciousness from poison gas, on the part of the *driver*), the court said non-negligence was based upon the principle that "failure to exercise the requisite degree of care presupposes that the person sought to be charged is capable of sense perception and judgment.

"Therefore, fundamentally to create liability for an act alleged to be negligent, it must be shown to have been the conscious act of a person's volition. He must have done that which he ought not to have done, or omitted that which he ought to have done, as a conscious being endowed with a will. Slattery v. Haley, 52 Ont. Law Rep. 95. The Restatement, Torts, Vol. 1, Section 2 (comment a), expresses the same thought in these words: 'There cannot be an act without volition. Therefore, a contraction of a person's muscles which is purely a reaction to some outside force, * * * or the convulsive movements of an epileptic, are not acts of that person. So too, movements of the body during sleep when the will is in abeyance are not acts * * * some outward manifestation of the defendant's will is necessary to the existence of an act which can subject

him to liability * * *.' Nowhere in cases dealing with the subject of torts do we find the suggestion that a person should be held responsible for injuries inflicted during periods of unconsciousness.

"In the present case there was no duty on the part of defendant to remain awake, as he had no part in the operation of the automobile. It is not charged by plaintiff that he was negligent in going to sleep. This Court has held in guest passenger cases that 'the mere fact of sleeping does not, as a matter of law, convict a guest in an automobile of negligence.' Frank v. Markley, 315 Pa. 257, 259, 173 A. 186, 187; Simrell v. Eschenbach, 303 Pa. 156, 154 A. 369; Oestreich v. Zibman, 110 Pa. Super. 457, 169 A. 14. So here the defendant, while he was riding in the car, was not required to keep awake. He could not foresee that after he had fallen asleep some sudden movement of his body might throw the plaintiff against the steering wheel and thus endanger the occupants of the car. Such an extraordinary occurrence is not within the realm of every day experience, and the mere fact that it happened in the present case is no indication that it was reasonably to be anticipated. The defendant was required to exercise foresight, not clairvoyance.

"Once asleep, defendant was no longer capable of voluntary action or of conscious behavior. Therefore, whatever happened while he was in that condition could have no significance, so far as defendant's liability was concerned, except as it might properly be designated a natural and probable consequence of some previous wrongful act. Since the record shows that his conduct prior to the accident involved no breach of duty toward plaintiff, it is clear that the instruction to the jury assigned as error was not improper."

These principles are applicable in the instant case. See Blashfield, Cyc. of Automobile Law and Practice, Vol. 4, Part 1, Sec. 2432. We do not agree with plaintiff's assertion that the last quoted paragraph "would make of negligence a positive wrong, contrary to the Missouri rule, a fine expression of which appears in Blunk v. Snider, 342 Mo. 26, 111 SW 2d 163." That case only applied the well-established rule that *intent* is not an element of negligence. Incapability "of voluntary action or of conscious behavior" was not there involved; nor was it in any of the cases cited therein.

Both parties cite and quote from 65 C. J. S., "Negligence," Sec. 3b, p. 331, the heading summary of which is: "The authorities are not in harmony as to whether volition, or voluntary action, is essential to actionable negligence." Lobert v. Pack, supra, is cited as authority for the statement "that fundamentally, in order to create liability for an act alleged to be negligent, it must be shown to have been the *conscious* act of a person's volition." (Italics ours.) All of the other cases cited for either of the alleged conflicting rules (including Root v. Topeka R. Co., 96 Kans. 694, 153 P. 550, and Michels v. Crouch, (Tex. Civ. App.) 122 SW 2d 211, upon which

plaintiff relies) involved the voluntary acts or inadvertent omissions of conscious persons. However, in the instant case the involuntary act of an unconscious individual is involved.

It is plaintiff's position that even if we adopt the rule announced in Lobert v. Pack, supra, it is not applicable here. In that case, the jury was told to find for defendant if they found that he had been "actually asleep." Instruction D in the instant case authorized a finding for defendant, either if he "was asleep and his mind and will were in abeyance" or if he "was so nearly asleep or so little awake that his mind and will were in abeyance."

The suggested distinction is not sound. The basis of the rule which regards as non-negligence the involuntary movements of a sleeping person is absence of volition or the utter lack of opportunity to make a choice or to determine a course of action. See definitions of "volition" in Webster's New International Dictionary (2d Ed.), Maloy's Medical Dictionary and Gould's Medical Dictionary.

The same absence of volition exists in the "states of mental confusion occurring on waking from sound slumber, in the state 'twixt sleep and wake." Wharton & Stiles, Medical Jurisprudence, 3rd Ed., Vol. I, Sec. 1162, p. 906. The "mind and will" are "in abeyance" in either instance,—completely in the case of sound sleep and probably almost completely in the case of dropping off to or awakening from sound sleep. In either instance, there is no conscious or voluntary action or no volition. The reason for the rule is the same in both instances.

Accordingly, the judgment is affirmed. *Van Osdol* and *Aschemeyer*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.