Ruth BALLEW, Plaintiff-Respondent,

v.

Michael AIELLO, Defendant,

and

Gerald M. Gilmore, Defendant-Appellant.

No. 8640.

Springfield Court of Appeals.

Missouri.

Dec. 5, 1967.

Daniel, Clampett, Ellis, Rittershouse & Dalton, W. Ray Daniel, B. H. Clampett, Springfield, for defendant-appellant.

No appearance for plaintiff-respondent.

STONE, Judge.

In this jury-tried damage suit for personal injuries sustained in a vehicular collision, plaintiff Ruth Ballew, a passenger in one vehicle, obtained a judgment for $1,000 against defendants Michael Aiello, the owner and operator of the other vehicle, and Gerald M. Gilmore, a passenger therein. The sole appellant is defendant Gilmore; the single issue here is as to whether or not plaintiff made a submissible case against him; and the only brief filed in this court is that of appellant. Counsel for plaintiff-respondent advise us that their client "has been fully paid all of her judgment and no longer has any interest in the outcome of this suit."

The collision under consideration occurred on the afternoon of Sunday, July 11, 1965, a cloudy and pleasant day, on Route A in Stone County, Missouri, at a point approximately one mile east of Hurley. At and near the place of accident, Route A runs in a general east-west direction and has a blacktop roadway about 21 to 22 feet in width, with narrow shoulders only 12 to 18 inches in width on either side. Plaintiff, then "almost 73," was riding in the center of the back seat as one of four passengers in a 1961 Buick sedan owned and being driven by L. V. Orr in an easterly direction. The five occupants of the Orr automobile, all of whom resided in the Ozark Methodist Manor at Marionville, Missouri, were on a leisurely Sunday afternoon ride. Defendant Aiello was driving a westbound 1954 Chevrolet sedan, defendant Gilmore was on the right side of the front seat, and their wives were riding in the rear, each behind her spouse. We are not informed as to the exact age of any of the occupants of the Aiello automobile other than Mrs. Gilmore, who stated that she was 80 years of age. However, Mrs. Aiello said that her husband had "retired" before they moved near Billings, Missouri, in January 1963; and it is obvious from the record that the other occupants of the Aiello automobile were mature adults, if not "senior citizens." The Aeillos and their guests, the Gilmores from California, were headed toward the Aiello home after a hearty meal at a dinner house in Christian County, Missouri. Defendant Aiello, westbound at a speed of 30 to 35 miles per hour (so he said) or 35 to 40 miles per hour (so eastbound driver Orr estimated), was occupied with his driving. Defendant Gilmore, as his wife put it, "was dozing as he usually does after a heavy meal at noon"; and defendant Aiello agreed that before the accident "he [Gilmore] was asleep." In the back seat, Mrs. Gilmore and Mrs. Aiello were engaged in conversation.

This after dinner atmosphere of contentment and tranquility was, in a matter of seconds, transformed into one of confusion and tragedy. As defendant Aiello, traveling downgrade, rounded a curve to his left, the right wheels of his westbound Chevrolet ran off the blacktop pavement onto the right-hand or north shoulder. Aiello's explanation was that he "had to pull on the shoulder there" because he met an eastbound automobile which "was right in the middle" of the pavement. His wife ob-

viously mistaken in her recollection that the curve was one to their right, otherwise confirmed her husband's explanation. Witness Orr, the driver of the eastbound Buick with which Aiello collided, and plaintiff, a passenger in the Orr automobile, did not agree that Aiello had been forced off the pavement by an eastbound automobile. Plaintiff specifically stated that she had seen no such automobile; and witness Orr emphatically asserted that, when he first sighted the Aiello automobile, it was "in the ditch on the *south* [Aiello's left-hand] side of the road" and that, after running in that ditch "for about 100 to 125 feet," it crossed the pavement and "went off into the ditch on the *north* [Aiello's right-hand] side of the road [where it] looked like it bounced about three feet off of the ground . . . ." (All emphasis herein is ours.)

On this appeal by defendant Gilmore, it matters not why or how the Aiello automobile came onto the right-hand or north shoulder or (if so) into the north ditch. All knowledgeable witnesses agreed that the automobile did run onto the north shoulder; that the right wheels traveled along that shoulder for a considerable distance (plaintiff's witness Stowe, the investigating trooper, said for approximately 52 yards); that the north shoulder was rough (Mrs. Aiello commented that her husband "had gotten over rather far . . . and there were cobblestones"); that Mrs. Gilmore became frightened ("the car was bouncing like it was off of the main road . . . I couldn't imagine what had happened, I was so frightened . . . I was so busy trying to hold my balance from sliding off the seat"); and that she "hollered, 'Oh, Mike; oh, Mike.'" Whereupon defendant Gilmore, slumbering on the right side of the front seat, "kind of woke up [and] saw . . . a rock about 12 or 15 inches big" on the shoulder. Immediately ("just that quick" and before Mrs. Aiello could say "don't") defendant Gilmore reached to his left, "grabbed hold" of the steering wheel with both hands,

"gave it one big jerk to the left," and thereby sharply turned the Aiello automobile onto the pavement.

Witness Orr, the driver of the eastbound Buick in which plaintiff was riding, testified that, after the Aiello automobile "came back onto the blacktop, [it] was going . . . in a weaving maneuver" crossing and recrossing the center line of the pavement several times; and that, at the time of collision, the Aiello automobile was headed in a northwesterly direction, turning back from the extreme left-hand or south edge of the pavement toward the right-hand or north side thereof. Defendant Aiello simply said that he "tried awful hard to control" his automobile, but that "we just hit right there in a split second." Whatever the course of the westbound Aiello automobile may have been, all of the evidence was to the effect that the eastbound Orr automobile had been on its right-hand or south side of the pavement at all times. The impact between the left front of the Aiello Chevrolet and the left front of the Orr Buick was of such severity that the Buick was knocked backward (toward the west) a distance of 31 feet from the point of impact as located by the investigating trooper, without objection, on the basis of "the gouge marks and debris." The Orr Buick came to rest "at right angles to the highway" with its front end on the south shoulder and its rear end 4½ feet lower at the bottom of the fill on that side of the road. The Aiello Chevrolet stopped 28 feet west of the point of impact, still "in the eastbound lane" and thus on its left-hand side of the pavement. By reason of the accident, defendant Gilmore sustained a blow on the head and lacerations in that area which required 22 sutures. Upon trial, he insisted that his glimpse of the "rock about 12 or 15 inches big" on the north shoulder as he was roused, was the last thing he remembered prior to the accident. "From there on I don't know a thing"—"that is the end of the picture as far as I can visualize."

Defendant Gilmore's position here is that a submissible case of actionable negligence was not made against him because, in grabbing and jerking the steering wheel, he reacted instinctively and instantaneously to the situation confronting him when roused from sleep and his action was involuntary and not volitional. " '[F]undamentally to create liability for an act alleged to be negligent, it must be shown to have been the conscious act of a person's volition.[1] He must have done that which he ought not to have done, or omitted that which he ought to have done, as a conscious being endowed with a will. Slattery v. Haley, 52 Ont. Law Rep. 95.' " Stokes v. Carlson, 362 Mo. 93, 98, 240 S.W.2d 132, 135(2); Lobert v. Pack, 337 Pa. 103, 9 A.2d 365, 367(1), 7 N.C.C.A.(N.S.) 312, 329–330(2). See Weldon Tool Co. v. Kelley, 81 Ohio App. 427, 76 N.E.2d 629, 631–632; 2 Harper and James, Torts, § 16.7, 1.c. 921–922. In short, "[t]here cannot be an act [imposing liability for negligence] without volition." 1 Restatement, Second, Torts § 2, comment a, p. 5.

■ Accordingly, the operator of a motor vehicle is not chargeable with negligence for his inability or failure to control the vehicle when suddenly stricken by a fainting spell or loss of consciousness from an unforeseen cause. Reece v. Reed, Mo., 326 S.W.2d 67, 71(4), 72(6); Holmes v. McNeil, 356 Mo. 846, 848, 204 S.W.2d 303, 305(5); Wells v. Asher, Mo.App., 286 S.W.2d 567, 570; Freeman v. Martin, 116 Ga.App. 237, 156 S.E.2d 511, 513(1), and cases there collected; annotation 28 A.L.R.2d 12, 35, § 15; 8 Am.Jur.2d Automobiles and Highway Traffic § 693, p. 244. Neither may one be held negligent for what he does or fails to do in a motor vehicle after he has, without fault on his part, involuntarily fallen asleep. Stokes v. Carlson, 362 Mo. 93, 240 S.W.2d 132; Lobert

v. Pack, 337 Pa. 103, 9 A.2d 365, 7 N.C. C.A.(N.S.) 312; annotation 28 A.L.R.2d 12, 42, § 20; 8 Am.Jur.2d Automobiles and Highway Traffic § 694, p. 245.

■ True, defendant Gilmore's conduct in grabbing and jerking the steering wheel occurred as he was being roused from sleep, rather than while he was still sound asleep. But, as was pointed out in Stokes v. Carlson, supra, 362 Mo. at 100, 240 S.W. 2d at 136–137: "The basis of the rule which regards as non-negligence the involuntary movements of a sleeping person is absence of volition or the utter lack of opportunity to make a choice or to determine a course of action. . . . *The same absence of volition exists in the 'state of mental confusion occurring on waking from sound slumber, in the state 'twixt sleep and wake.'* Wharton & Stilles, Medical Jurisprudence, 3rd Ed., Vol. I, Sec. 1162, p. 906. *The 'mind and will' are 'in abeyance' in either instance,—completely in the case of sound sleep and probably almost completely in the case of dropping off to or awakening from sound sleep. In either instance, there is no conscious or voluntary action or no volition. The reason for the rule is the same in both instances."*

■ There was not, and could not well have been, any suggestion in the instant case that defendant Gilmore was under the duty to remain awake. Stokes v. Carlson, supra, 362 Mo. at 99, 240 S.W. 2d at 136(4); Lobert v. Pack, supra, 9 A.2d at 367(2). In presenting her case, plaintiff called to the witness stand both defendant Aiello and defendant Gilmore, so the material facts bearing upon the determinative issue as to whether or not Gilmore's "mind and will" were "in abeyance" when he grabbed and jerked the steering wheel were shown as a part of plaintiff's case in chief [Reece v. Reed, supra, 326

---

1. "Volition" is defined as "[t]he act or power of willing or choosing" [Maloy, Medical Dictionary for Lawyers (1942), p. 444], and as the "[a]ct of willing or choosing; act of deciding, as on a course

of action or an end to be striven for; exercise of the will." Webster's New International Dictionary, 2nd Ed., p. 2856.

S.W.2d at 71(5)] ; and, on that issue, there was no conflict in the testimony adduced in plaintiff's case in chief and that testimony was not " 'contradicted, either expressly or by inference, by other evidence or circumstances, as where the circumstances or the evidence of other witnesses would warrant the trier of facts in disregarding the testimony or drawing a contrary inference.' " Holmes v. McNeil, 356 Mo. at 850, 204 S.W. 2d at 306(6), and cases there cited. Without again reviewing the evidence pertaining to defendant Gilmore's conduct, we here record our considered opinion that such evidence affirmatively established that there was no volitional action on his part in grabbing and jerking the steering wheel, and that, therefore, such evidence was insufficient, as a matter of law, to make a submissible case of actionable negligence against him. Hence, the trial court erred in overruling his motion for a directed verdict at the close of all the evidence.

The judgment against defendant Gilmore is reversed.

HOGAN, P. J., and TITUS, J., concur.