Merle GIBBS and Juanita Gibbs, Plaintiffs–Respondents,

v.

NATIONAL GENERAL INSURANCE CO., Defendant–Appellant.

No. 20886.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 21, 1997.

Wallace S. Squibb, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for defendant-appellant.

James E. Corbett, Corbett Newman Law Firm, Springfield, for plaintiffs-respondents.

JAMES EIFFERT, Special Judge.

On April 13, 1993, Merle Gibbs was employed as a policeman for the City of Branson West, Missouri. On that date, Gibbs arrested Mark Onan for driving while intoxicated. He placed Onan in the front seat of his patrol vehicle, a 1993 Crown Victoria. The patrol vehicle was owned by the City of Branson West Police Department. Gibbs then attempted to transport Onan to the Stone County, Missouri, jail. Onan rode as an unrestrained front seat passenger.

En route to the Stone County jail Onan reached over and grabbed the steering wheel of the patrol car. He turned the wheel in a clockwise fashion causing the vehicle to leave the road and collide with a rock embankment. As a result, Gibbs sustained bodily injury.

The 1993 Crown Victoria was insured under a liability policy issued to the city by

Casualty Indemnity Exchange (Casualty). Gibbs filed a claim with Casualty. On February 24, 1993, Casualty denied coverage to Onan for liability he had in causing the collision. In denying Gibbs' claim, Casualty stated:

> We do not consider Mr. Onan as an insured driver of our vehicle and in fact he could possibly be considered as operating a stolen vehicle. Therefore, there is no coverage for him. Further, we see no coverage for Mr. Gibbs, as this would come under a workers compensation claim under the City's workers comp. carrier. Therefore, we must respectfully deny this claim.

Gibbs also made a claim under the automobile policy covering his personal vehicles. The vehicles were insured under a policy issued by National General Insurance Company (hereinafter sometimes referred to as defendant). The policies issued to Gibbs by defendant provide as follows:

PART C—UNINSURED MOTORISTS COVERAGE:

> A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury": ....

The policies further provide under PART C:

> However, "uninsured motor vehicle" does not include any vehicle or equipment:
>
> 1. Owned by or furnished or available for the regular use of you or any "family member".
>
> ....

National General denied coverage under the uninsured motorist provision. It stated that Onan was not an "owner or operator" of an uninsured vehicle. National General further found that even if Onan were an owner or operator of the 1993 Crown Victoria, Gibbs would be denied coverage under the policy definition of an "uninsured motor vehicle," which excludes a vehicle available for the insured's "regular use."

While on duty, Gibbs was not allowed to drive the automobile outside the city limits of Branson West except under specific circumstances, and he did not drive the automobile unless he was working his duty shift. He used the vehicle while working his duty shift an average of 25 hours per week. He drove his own vehicle to and from work.

On October 3, 1994, Merle and Juanita Gibbs (plaintiffs) filed suit against National General seeking coverage under plaintiffs' personal uninsured motorist policy, vexatious penalties and loss of consortium. Subsequently, plaintiffs amended their petition to add a negligence claim against Mark Onan.

Defendant filed its answer to plaintiffs' amended petition on May 3, 1995. Defendant pled by way of affirmative defense that no coverage existed because Onan was neither the owner nor operator of an uninsured vehicle and plaintiff Merle Gibbs was operating a vehicle available for his regular use at the time of the collision.

On August 25, 1995, Merle Gibbs filed his motion for partial summary judgment. Defendant filed its response and a cross-motion for summary judgment. On November 21, 1995, the trial court heard oral argument on the motions and then entered an Interlocutory Judgment and Order with findings of fact and conclusions of law. The court found that at the time of the collision, Mark Onan was the operator of the vehicle. The court also found the policy provision excluding a vehicle that is available or furnished for the regular use of a named insured from the definition of an "uninsured motor vehicle" void as against public policy. On February 7, 1995, an interlocutory order of default was entered against Mark Onan.

On February 14, 1995, the trial court entered its Final Judgment. The court acknowledged that there is no reported Missouri decision concerning whether "grabbing the wheel and turning it in a clockwise fashion" constitutes operation of a motor vehicle. The court also acknowledged that there is no reported Missouri decision concerning the provision of the policy excluding a vehicle that is available or furnished for the regular use of a named insured from the definition of an "uninsured motor vehicle." Regardless, the court concluded that Mark Onan was an operator for purposes of the uninsured motorist policy and that the regular use exclu-

sion was void against public policy. The court entered judgment in favor of plaintiffs and against defendant and Mark Onan.

Defendant presents two points on appeal. They are directed to the summary judgment entered against defendant.

The standard for reviewing a summary judgment is set forth in *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371 (Mo. banc 1993). Review of a grant of summary judgment is essentially de novo. *Id.* at 376. The criteria for testing the propriety of a summary judgment are no different from those used by the trial court in sustaining such a motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.*

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Rule 74.04. In the instant case, there is no dispute as to the material facts. Therefore, defendant does not argue that summary judgment was improper due to the existence of a genuine issue as to a material fact. Instead, defendant alleges in this appeal that the circuit court erred in applying the law to the facts.

■ In Point I defendant argues the circuit court erred in finding that Mark Onan was the operator of the police cruiser for purposes of plaintiffs' uninsured motorist policy. Part C of plaintiffs' automobile liability policy provides uninsured motorist coverage. Part C states in pertinent part:

A. We will pay damages which an "insured" is legally entitled to recover from the owner or *operator* of an "uninsured motor vehicle" because of "bodily injury": ..... [emphasis added].

In its answer to plaintiffs' first amended petition, defendant pled by way of affirmative defense that no coverage existed under the uninsured motorist policy because Mark Onan was not the owner or operator of an "uninsured motor vehicle." In granting plaintiffs' motion for summary judgment, the circuit court found that Mark Onan's actions constituted operation of a motor vehicle.

The Missouri "uninsured motorist statute" is found in § 379.203,[1] which provides in pertinent part:

1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, or in the case of any commercial motor vehicle, as defined in section 301.010, RSMo, any employer having a fleet of five or more passenger vehicles, such coverage is offered therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom....

The statute does not provide a definition of "operator." There is no Missouri decision addressing what constitutes an operator of a motor vehicle for purposes of the uninsured motorist statute. Furthermore, as the trial court noted in its Final Judgment, and the defendant in its brief, there is no Missouri decision concerning whether a passenger grabbing the steering wheel and turning it constitutes operation of a motor vehicle. Thus, this is a case of first impression for Missouri courts.

Although § 379.203 does not define "operator," the section does make cross-references to RSMo chapters 301 and 303. *See* § 379.203.1 and .5. *See also, Ragsdale v. Armstrong,* 916 S.W.2d 783 (Mo. banc 1996);[2] and *Harrison v. MFA Mut. Ins. Co.,*

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

2. The Missouri Supreme Court in *Ragsdale* sought to define "motor vehicle liability policy" for purposes of § 379.203. Since that section failed to provide a definition, the Court noted that § 379.203 explicitly refers to chapter 303 four times. The Court then looked to chapter 303's definition of a "motor vehicle liability policy." 916 S.W.2d at 785.

607 S.W.2d 137, 144 (Mo. banc 1980).[3] Additionally, the introduction to chapter 379 specifically cross-references that chapter to chapter 303.

Chapter 303 of the Missouri Revised Statutes is the Motor Vehicle Financial Responsibility Law. § 303.010. Chapter 303 defines "operator" as a person who is in actual physical control of a motor vehicle. § 303.020(8). Chapter 301 governing the registration and licensing of motor vehicles defines "operator" as any person who operates or drives a motor vehicle. § 301.010(39), RSMo Supp.1995.

*Hay v. Ham*, 364 S.W.2d 118 (Mo.App. 1962), addressed the issue of what constitutes an operator of a motor vehicle for purposes of chapters 303 and 304.[4] The defendant in *Hay* was a passenger in a vehicle parked outside plaintiff's store. *Id.* at 120. The car was left running while the driver went in for groceries. *Id.* The passenger "scooted" over to allow another passenger in and accidentally touched the accelerator, causing the vehicle to race forward and crash into the store. *Id.* Chapter 304 does not define "operating" and, thus, the court referred to § 303.010's definition of an operator. *Id.* at 122. The court found that Hay's action of accidentally touching the accelerator put her in actual physical control of the vehicle. *Id.* at 123. Therefore, the court found the passenger an operator of the vehicle for purposes of § 303.010. *Id.*

Lacking any authoritative decisions involving chapters 379 and 303, this court must look at cases addressing "operator" for purposes of other Missouri motor vehicle statutes. "Under the general rule that '[w]here one statute deals with a subject in general terms and another deals with the same subject in a more minute way, the two should be harmonized if possible.'" *Harrison v. MFA Mut. Ins. Co., supra,* at 144, *citing State ex rel. Fort Zumwalt School District v. Dickherber,* 576 S.W.2d 532, 532–37 (Mo. banc 1979).

In addition to chapters 301, 303, 304 and 379, chapters 302 and 577 address motor vehicles. Chapter 302, entitled Drivers' and Commercial Drivers' Licenses, defines "operator" as every person who is in actual physical control of a motor vehicle upon a highway. § 302.010(15), RSMo Supp.1995. Chapter 577, Public Safety Offenses, defines "operates" or "operating" as physically driving or operating or being in actual physical control of a motor vehicle. § 577.001.1. Thus, the key to operation of a motor vehicle in Missouri is actual physical control.

For purposes of chapters 304 and 577, Missouri courts have repeatedly construed "operator" broadly. *State v. O'Toole,* 673 S.W.2d 25 (Mo. banc 1984) (sleeping behind wheel considered operation for DWI statute); *Teters v. Kansas City Public Service Co.,* 300 S.W.2d 511 (Mo.1957) (opening rear door of a vehicle causing it to come in contact with a passing bus is operation); *Taylor v. McNeill,* 714 S.W.2d 947 (Mo.App.1986) (sleeping on passenger side of vehicle considered operator of vehicle for purposes of driving while intoxicated statute); *Phillips v. Stockman,* 351 S.W.2d 464 (Mo.App.1961) (looking under the hood of a car on the shoulder of road is operation of a motor vehicle); *Karnes v. Ace Cab Co.,* 287 S.W.2d 378 (Mo.App.1956) (opening a car door constitutes operation); *Stewart v. Jeffries,* 224 Mo.App. 1050, 34 S.W.2d 560 (1931) (repairing car on highway is operation).

Still, there is no Missouri decision discussing whether a passenger grabbing the steering wheel is an operator of the motor vehicle for purposes of any of the above statutes. The only Missouri cases even involving a passenger grabbing the wheel concern negligence causes of action. *See Stokes v. Carlson,* 362 Mo. 93, 240 S.W.2d 132 (1951); *Ballew v. Aiello,* 422 S.W.2d 396 (Mo.App.1967).[5] In fact, *Hay v. Ham, supra,* is the only passenger as operator decision in Missouri.

**3.** In *Harrison* the court again notes that § 379.203 directs that the uninsured motorist statute be read together with chapter 303, even if for limited purposes.

**4.** RSMo Supp.1995, chapter 304, deals with traffic regulations.

**5.** In both *Stokes* and *Ballew,* the courts found that the passenger was not negligent in that grabbing the wheel was not a voluntary act. Both defendants apparently grabbed the wheel while asleep.

Based on the above discussion, we look to other jurisdictions who have addressed the issue of whether grabbing the wheel constitutes operation under an insurance policy. Most decisions interpret operator in such a way to provide coverage to the insured. *See, e.g., O'Connell v. New Jersey Fidelity & Plate Glass Ins. Co.,* 235 N.Y. 583, 139 N.E. 744 (App.1923); *Williams v. Nelson,* 228 Mass. 191, 117 N.E. 189 (1917). Missouri has likewise held that an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage. *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707, 710 (Mo. 1964).

Two cases involving automobile policies which have facts analogous to this case are *State Farm Mut. Auto. Ins. Co. v. Larsen,* 62 Ill.App.3d 1, 18 Ill.Dec. 582, 377 N.E.2d 1218 (1978), and *United States Fidelity & Guaranty Co. v. Hokanson,* 2 Kan.App.2d 580, 584 P.2d 1264 (1978). In *State Farm v. Larsen, supra,* the court found that a passenger becomes an operator of the vehicle when the passenger grabs the steering wheel. 18 Ill. Dec. at 585, 377 N.E.2d at 1221. In *Larsen,* an insured passenger reached over and grabbed the wheel causing a collision. *Id.* at 584, 377 N.E.2d at 1220. The passenger's insurance policy provided that coverage existed in non-owned vehicles provided such use, operation or occupancy of such non-owned vehicle is with permission. *Id.* The court found that the passenger had permission as a passenger, but when he grabbed the wheel he became the operator of the vehicle without permission. *Id.* at 585, 377 N.E.2d at 1221. The Illinois court stated:

> However, we feel that although Snower may have been acting as a passenger upon entering the Dodge, he was in fact operating the Foreman vehicle just prior to the collision. Snower's act of grabbing the steering wheel and turning it caused the automobile to cross the median strip and enter the westbound traffic lanes. Accordingly, it is evident that he exerted dominion and control over the Dodge at that time.

*Id.*

In *United States Fidelity & Guaranty Co. v. Hokanson, supra,* the court found that a passenger's act of grabbing the wheel in which she was riding constituted use and operation of a motor vehicle. The *Hokanson* court stated that coverage clauses are to be read broadly, while exclusions read narrowly, to afford the greatest possible coverage. *Id.* 584 P.2d at 1266. The court found:

> We believe that when a person takes control of a moving vehicle, even though for only an instant, that person has gained control over it and is operating it within the normal definition and understanding which ordinary laymen would give to an insurance policy.

*Id.* 584 P.2d at 1267.

█ Based on the foregoing, this court construes "operator" for purposes of Missouri's uninsured motorist statute broadly to afford coverage. Thus, this court finds that grabbing the wheel of a motor vehicle constitutes operation of that vehicle. Point I is denied.

In Point II, defendant argues that the circuit court erred in finding that the provision in its uninsured motorist policy excluding a vehicle that is available or furnished for the regular use of a named insured from the definition of an "uninsured motor vehicle" void as against public policy.

█ The public policy of Missouri's uninsured motorist statute is to see that every insured under such coverage has available the full statutory amount of coverage to the same extent had the tortfeasor complied with the requirements of the Motor Vehicle Financial Responsibility Law. *Keeler v. Farmers & Merchants Ins. Co.,* 724 S.W.2d 307, 311 (Mo.App.1987), *citing Webb v. State Farm Mut. Auto. Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App.1972). Section 379.203 requires coverage to the insured persons legally entitled to recover damages from the owners and operators of uninsured motor vehicles and any attempt to restrict this mandate is void as against public policy. *Id.* at 310.

█ As defendant points out in its brief, Missouri courts have repeatedly held that the regular use exclusion is valid when used in a liability policy. *Schuster v. Shelter Mut. Ins.*

*Co.,* 857 S.W.2d 381 (Mo.App.1993); *Sisk v. American Family Mut. Ins. Co.,* 860 S.W.2d 34 (Mo.App.1993). However, Missouri courts have not decided whether the regular use exclusion is void as against public policy when used in an uninsured motorist policy. *Schuster* and *Sisk* are not conclusive on this determination, however, due to the fact that a liability policy and uninsured motorist policy are conceptually dissimilar. *Moreland v. Columbia Mut. Ins. Co.,* 842 S.W.2d 215, 224 (Mo.App.1992), *citing Keeler, supra,* at 309. The two contain different public policy rationales. *Id.*

Missouri courts have addressed other exclusions in the context of § 379.203. Missouri courts have made it clear that, unlike liability insurance, uninsured motorist coverage inures to the person, not the vehicle. *First National Ins. Co. of America v. Clark,* 899 S.W.2d 520, 522 (Mo. banc 1995). An exclusion in an uninsured motorist policy denying coverage to a named insured when riding in another vehicle owned by him was held contrary to § 379.203's public policy. *Shepherd v. American States Ins. Co.,* 671 S.W.2d 777 (Mo. banc 1984).

The policy in question in *Shepherd* contained an exclusion for vehicles owned by the insured but not covered by the policy. *Id.* at 778. The *Shepherd* court noted that § 379.203 acts as a limitation on the freedom of contract with respect to uninsured motorist coverage. *Id.* at 779. The court also stated that the statute contained no allowance for limitation or restriction on the insurer's liability. *Id.* at 778.[6]

Although the provision invalidated in *Shepherd* pertained to an exclusion and not a definition as in the instant case, the effect of the two provisions are the same. Coverage is denied for injuries sustained while in a particular vehicle. Therefore, the analysis in *Shepherd* should equally apply to the instant case.

The Eighth Circuit has likewise held that provisions limiting uninsured motorist coverage to particular vehicles is void under Missouri law. *Bernardo v. Northland Ins. Co.,* 45 F.3d 272, 274 (8th Cir.1995). The *Bernar-*

do court recognized that uninsured motorist insurance inures to an individual. *Id.* Applying Missouri law, the court stated that restrictions limiting uninsured motorist coverage to particular vehicles *OR* to the ownership status of a vehicle are invalid. *Id.*

Missouri courts have held that the government vehicle exclusion from the definition of an uninsured motor vehicle in an uninsured motorist policy is void against public policy. *Martin v. State Farm Mut. Auto. Ins. Co.,* 755 S.W.2d 638 (Mo.App.1988). The *Martin* policy contained a provision excluding from the definition of uninsured motor vehicle any government-owned vehicles. *Id.* at 640. The *Martin* court found that the exclusion was an attempt to restrict uninsured motorist coverage and held that exclusion invalid as against public policy. *Id.* The court stated, "We do not wish to 'whittle away' at the uninsured motorist statute by furthering exclusions and exceptions which were not placed there by the legislature." *Id.*

Other jurisdictions with uninsured motorist statutes similar to Missouri's have held that a regular use exclusion is violative of public policy. *Fontanez v. Texas Farm Bureau Ins. Co.,* 840 S.W.2d 647 (Tex.App.—Tyler 1992); *Briones v. State Farm Mut. Auto. Ins. Co.,* 790 S.W.2d 70 (Tex.App.—San Antonio 1990); *Smith v. Heritage Mut. Ins. Co.,* 48 Ohio App.3d 67, 547 N.E.2d 1235 (1988); *State Farm Mut. Auto. Ins. Co. v. Jackson,* 757 F.2d 1220 (11th Cir.1985).

In *Smith,* the policy sought to narrow the statutory definition of uninsured motor vehicle by excluding a vehicle available for regular use by the insured. 547 N.E.2d at 1236. The Ohio uninsured motorist statute contained language identical to Missouri's. *Id.* The Ohio court found that the exclusion to the definition was an impermissible attempt to limit coverage. *Id.* at 1236–37. The court stated that an insurer cannot issue policies offering less coverage than that mandated by statute. *Id.* at 1237. "An insurer may specifically contract to exclude coverage for a specific occurrence or to a specific person but it cannot do so by redefining statutory language." *Id.*

---

**6.** See also *Thornburg v. Farmers Ins. Co.,* 859 S.W.2d 847 (Mo.App.1993).

Similarly, in *State Farm v. Jackson, supra,* the Eleventh Circuit found the regular use exclusion in an uninsured motorist policy void. *Id.* at 1220. Alabama also had enacted an uninsured motorist statute similar to Missouri's § 379.203. *Id.* at 1222.

In *Briones v. State Farm Mut. Ins. Co., supra,* Briones sought coverage under his family's uninsured motorist clause. 790 S.W.2d at 71. The policy excluded from the definition of an uninsured motor vehicle a vehicle available for regular use. *Id.* Article 5.06–1 of the Texas Insurance Code governed uninsured motorist coverage. *Id.* at 72–73. The purpose of the statute is the protection of insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. *Id.* The court found the regular use exclusion invalid for uninsured motorist coverage under Texas law. *Id.* at 74.

The reasoning of *Briones, supra,* was applied by the Texas Court of Appeals in *Fontanez v. Texas Farm Bureau Ins. Co., supra,* to again invalidate a regular use exclusion in the definition of an "uninsured motor vehicle." *Fontanez,* 840 S.W.2d at 650.

For the foregoing reasons, this court finds that excluding a vehicle available for the regular use of the insured from the definition of uninsured motor vehicle violates Missouri public policy. Point II is denied. The judgment is affirmed.

MONTGOMERY, C.J., and CROW, P.J., concur.