**Michael MARTIN, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Defendant–Respondent.**

No. 53289.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 28, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 1988.

Application to Transfer Denied
Sept. 13, 1988.

gan backing a four ton dump truck owned by the city out of its parking place and, in so doing, drove over both of Martin's legs. The liability insurance policy which University City maintained on the dump truck specifically excluded coverage for any "bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment." Alexander had no liability insurance of any kind. Accordingly, plaintiff Martin sought recovery from his own insuror, defendant State Farm Mutual Automobile Company, under the uninsured motorist provision of his policy. The trial court granted summary judgment for State Farm. Martin appeals; we reverse and remand.

The uninsured motor vehicle provision in Martin's policy provided:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
>
> An uninsured motor vehicle does not include a land motor vehicle:
>
> . . . . .
>
> 4. owned by any government or any of its political subdivisions or agencies.

State Farm filed a motion for summary judgment based on this exclusion. The motion was granted on May 12, 1987, and this appeal followed.

A motion for summary judgment shall be sustained if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). On appeal, we review the entire record in a light most favorable to the party against whom judgment is entered. *Fisher v. Scott & Fetzer Co.*, 664 S.W.2d 662, 663 (Mo.App.1984).

■ In his first point, Martin alleges that the State Farm uninsured motorist provision should apply to him despite the fact that it contains a clause which bars his

Charles A. Mogab, Thomas J. Gregory, St. Louis, for plaintiff-appellant.

Sam P. Rynearson, Kevin P. Schnurbusch, Marie–Anne Woodruff, St. Louis, for defendant-respondent.

STEPHAN, Presiding Judge.

This is a civil action for personal injuries brought by plaintiff, Michael Martin, under the uninsured motorist provision of his own automobile insurance policy. Martin, a mechanic employed by the City of University City, was injured on October 28, 1982, while working on a vehicle. Not realizing that Martin was there, a fellow employee of University City, Sylvester Alexander, be-

claim. In order to be considered "uninsured" under the State Farm "uninsured motorist provision", certain contractual requirements must be met. The contract specifically states that "[a]n uninsured motor vehicle does not include a land motor vehicle ... owned by any government or any of its political subdivisions or agencies." This language is clear and unambiguous. We, therefore, give the language its plain meaning even though it is contained within a restrictive clause. *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980).

This contract precludes a claim which arises out of an accident in which the negligently operated vehicle is government owned. The City of University City did own the dump truck that injured Martin. He has, therefore, failed to meet the contractual requirement defining "uninsured motor vehicle." Point I is denied.

■ Martin's second point asserts that the exclusion under the uninsured motorist provision of his policy, exempting government-owned vehicles, should be void as against public policy. This point raises an issue of first impression for Missouri courts, but has been addressed elsewhere.

Missouri's Uninsured Motorist Act, § 379.203.1, RSMo 1979, provides as follows:

> No liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder
> ...

State Farm claims that the uninsured motorist statute does not apply here because § 303.350 specifically exempts government-owned vehicles from the requirements of the Safety Responsibility Law (Chapter 303). We do not agree.

*Vaught v. State Farm Fire & Casualty Company*, 413 F.2d 539 (8th Cir.1969) involved Arkansas statutes similar to those here. In both cases, the Uninsured Motorist Act and the Safety Responsibility Act were codified in separate chapters. The insurance company in *Vaught* argued that since the Safety Responsibility Act contained an exclusion for government vehicles, so should the Uninsured Motorist Act. The court there held that "if the legislature had so intended it could have been as explicit with respect to the one as it was with the other." *Vaught*, 413 F.2d at 541.

We agree. If the policy is designed to restrict insured parties from the benefits provided by law, then the purpose of the law has been evaded and is void as against public policy. *Craig v. Iowa Kemper Mutual Insurance Co.*, 565 S.W.2d 716, 725 (Mo.App.1978). We do not wish to "whittle away" at the uninsured motorist statute by furthering exclusions and exceptions which were not placed there by the legislature. *Johns v. Liberty Mutual Fire Insurance Company*, 337 So.2d 830, 831 (Fla.App. 1976).

We hold that summary judgment was not proper as a matter of law. The judgment of the trial court is reversed and the cause is remanded for trial on the merits.

PUDLOWSKI, J., concurs.

SATZ, J., concurs in separate opinion.

SATZ, Judge, concurring.

I concur in the result reached by the majority. I reach the result, however, for different reasons.

Provisions in insurance policies providing for "uninsured motor vehicle coverage" or, as some prefer, "uninsured motorist coverage," are a source for unceasing court decisions and legal commentary. *See, e.g.*, Widiss, *Uninsured and Underinsured Motorist Insurance*, 2 vol. (2d ed. 1985). I bow to no man in my inability, at times, to understand the convoluted language of insurance policies, nor do I take a back seat to anyone in my inability, at times, to resolve conflicting interpretations made by

the courts of the same or similar policy language, based upon the same or similarly worded statutes. Thus, admittedly, I set out my reasons for differing with the majority with trepidation.

The uninsured motor vehicle provision in plaintiff's policy provides:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
>
> Uninsured motor vehicle—means:
>
> 1. ...
> 2. A land motor vehicle insured ... for bodily injury liability at the time of the accident; but
> a. ...
> b. the insuring company denies coverage....

To me, this language is clear. If plaintiff is injured by the negligent operation of an insured vehicle, plaintiff is covered by the uninsured motorist provision of his own policy if the insurer of the vehicle denies liability coverage. These are the facts here; for, according to defendant's trial memorandum in support of its motion for summary judgment, "[c]overage was denied plaintiff under [University City's casualty] policy under the co-employee exclusion contained in that policy."

My interpretation of the noted policy language may be deceptively simple. Those expert in the arcane rules of interpreting insurance policy provisions may insist that the phrase "denial of coverage" must be narrowly construed to mean a denial of liability based upon the failure of an insured to meet a "condition" of the policy, such as a failure to report the accident or a failure to cooperate; this failure, in turn, would "void" the policy; and a "void" policy would be the basis of the "denial of coverage." This, the expert would insist, is different than a "denial of coverage" based upon the facts of a particular accident which simply "exclude" the named vehicle from coverage in that instance, with the policy still valid and subsisting.

This subtle distinction may be made manifest to the expert by the phrase "denial of coverage." It certainly would not be clear to the usual, normal purchaser of liability insurance. Thus, I see no reason to so limit this phrase.

Admittedly, the interpretation of uninsured motor vehicle provisions are not broadly interpreted in some one car collisions. *See e.g., Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137 (Mo. banc 1980). In *Harrison,* a husband was the driver of a vehicle in which his wife and daughter were passengers. The vehicle was insured by MFA. The car turned over, the husband was killed, and the wife and daughter were injured. MFA denied liability coverage to the wife and daughter under a "household member" exclusion. The wife and daughter then sued under the uninsured motorist provision of the policy. Since there was no liability coverage, they contended, the vehicle was an uninsured vehicle as to them.

Our Supreme Court held that the vehicle was not an "uninsured highway vehicle" under the husband's policy. The Court reasoned: L.C. 140

> An "uninsured highway vehicle" is defined in the policy to exclude *"an insured automobile* or a highway vehicle furnished for the regular use of the named insured, his spouse, or a relative." (emphasis added). An "insured automobile" is defined to mean the automobile described in the policy. By policy definition, then, the [vehicle in question], as the automobile described in the policy, was not an "uninsured highway vehicle"; instead it was an "insured automobile."

Defendant would extend the reach of this reasoning. Defendant contends *Harrison* and its progeny teach that the determinative fact here is not whether the insurer of the other vehicle denies coverage but simply whether the other vehicle was insured. Defendant misinterprets the teaching of *Harrison* and its progeny.

In *Harrison,* the Court limited its reasoning by stating:

Neither the present case nor *Miles* [another one car collision case] involved a two vehicle accident, but we do not read *Miles* as requiring in a two vehicle accident no more than an inquiry whether any insurance applied to the second vehicle under any circumstances as determinative of whether the vehicle was "insured" or "uninsured" for the purposes of required uninsured motorist coverage. Whether a motor vehicle is insured or uninsured by liability coverage depends on whether the liability coverage is applicable under its terms and conditions in light of the specific circumstances of the vehicle's operation. The liability coverage is applicable if all conditions of the policy are met. Questions of applicability of liability insurance can be answered on the basis of events which precede an accident. For example, a liability policy is not applicable, and hence the vehicle is uninsured, where the automobile is driven by a thief or a non-permissive user, even though the automobile in question is the described automobile of the liability policy. *Harrison* at 140–141.

To me, this language and its teaching are clear.[1] If you are in a collision with another car, you may still be covered by your own uninsured motorist provision even though the other car is the named vehicle in a liability insurance policy. The determinative question for uninsured motor vehicle coverage is not only whether the alleged tort feasor had liability insurance at the time of the accident, but, also, if he had such insurance, whether his insurer is unwilling to provide liability coverage. Since University City's insurer denied liability coverage, defendant here is liable to plaintiff under the noted language of defendant's policy.

However, even if this analysis is wrong, defendant still should not prevail. As discussed by the majority, defendant's basic argument rests on its policy provision excluding government owned vehicles from

its defined class of uninsured motor vehicles.

The majority voids this provision by reading our uninsured motor vehicle statutes in isolation. I believe these statutes should not be read in isolation. There are several reasons why they must be read together with our safety responsibility statutes. Uninsured motorist statutes are enacted as a complement to safety responsibility statutes. 1 Widiss, *Uninsured and Underinsured Motorist Insurance*, Chap. 1, §§ 1.1–1.14 (2d ed. 1985). Moreover, our uninsured motorist statutes direct us to read them together with the safety responsibility statutes, at least, insofar as minimum coverage is concerned. § 303.030.5 RSMo. 1986; *Harrison v. MFA Mut. Ins. Co., supra,* 607 S.W.2d at 144. Furthermore, we have been told to "harmonize" the uninsured motorist statutes with the safety responsibility statutes whenever possible. *Harrison* at 144. Reading all these statutes together, however, does not change the conclusion reached by the majority.

To harmonize the uninsured motorist statutes with the safety responsibility statutes does not require the former to be the mirror image of the latter. Thus, the fact that the safety responsibility statutes exempt the state and its political subdivisions from their purview, § 303.350 RSMo. 1986, does not mean government vehicles likewise may be excluded from the purview of the uninsured motorist statutes.

Defendant's arguments, however, require a more sophisticated answer than this statement. Defendant argues that, in Missouri, we have recognized the purpose of uninsured motorist coverage is to protect insureds from "financially irresponsible" motorists. Since municipalities are exempt from the safety responsibility law, defendant reasons, "the presumption [is] that municipalities are financially responsible." Therefore, defendant concludes, excluding the vehicles owned by a municipality from

---

**1.** The author of the majority opinion in *Harrison,* Judge Seiler, is a careful craftsman. As can be seen, he does state liability coverage depends upon the "terms and conditions" of a

policy. The possible use of the word "condition" as a term of art is discussed earlier in the present concurring opinion.

defendant's uninsured motor vehicle coverage is not inconsistent with the purpose of our uninsured motorist statutes.

Admittedly, our courts have made the general statement that the purpose of requiring uninsured motorist coverage is to protect persons from financially irresponsible motorists. *See, e.g., Cook v. Pedigo,* 714 S.W.2d 949, 953 (Mo.App.1986). The purpose of requiring uninsured motorist coverage, however, is not limited to just protection of persons from financially irresponsible motorists. The coverage is required in some instances even though the owner of the other vehicle may have been financially responsible. Thus, uninsured motorist coverage must be provided even if a financially responsible motorist purchases auto liability insurance, but, through no fault of his, his insurer becomes insolvent. § 379.203.2 RSMo. 1986. Moreover, even defendant's policy here provides uninsured motorist coverage when the other vehicle is the designated vehicle in an existing liability policy but the liability insurance denies coverage.

Furthermore, I question the presumption that municipalities are exempted from our safety responsibility statutes because they are "financially responsible." It is much more probable that the "sovereign and its political subdivisions" were exempted from those statutes because, at the time they were enacted, the sovereign was immune from suit, and, therefore, there was no need for the sovereign to comply with the requirements of the safety responsibility statutes.

Finally, if the sovereign were immune, defendant's insured would be precluded from this source of indemnification, and, insofar as defendant's insureds are concerned, the lack of this source of indemnification would be no different from the lack of the source of indemnification because the source was an insolvent insurer or an insurer which denied liability coverage. If, in fact, the sovereign were still immune in vehicular collision cases, defendant's provision should have been altered to be internally consistent and also to be consistent with the purpose of our uninsured motorist statutes. If the government were still immune defendant should have provided uninsured motor vehicle coverage in accidents involving vehicles owned by the government "when indemnification is unavailable because the governmental body is immune from suit, because the government's liability is limited, or because the governmental body does not possess adequate resources." 1 *Widiss, supra,* § 8.9, p. 256.

Defendant does, however, in other arguments acknowledge that the exemption of the sovereign from our safety responsibility law was based on sovereign immunity. Not only does defendant acknowledge this, it uses sovereign immunity as a basis for its other arguments. Thus, quoting from the Texas Supreme Court, defendant argues:

> [T]he purpose of [our Uninsured Motorist Act] was not to protect insureds from *all* negligent uninsured motorists. We believe that the purpose of the Act is ... to protect the conscientious and thoughtful motorist against losses caused by negligent financially irresponsible motorists. The Legislature did not intend all uninsured motorists to be covered by this act, but only those uninsured motorists who are "financially irresponsible."

> . . . . .

> If the plaintiff could not recover for her injuries from the City of Grand Prairie, it would not be because the city was "financially irresponsible" in not insuring the fire truck. The reason would be because the then-existing doctrine of sovereign immunity protected the city in the performance of the governmental function of providing fire protection. [Citation omitted]. That a governmental unit is protected by the doctrine of sovereign immunity would certainly preclude recovery from that unit, but that does not mean that the unit is "financially irresponsible" for purposes of the Texas Uninsured Motor Vehicle Act. *Francis v. International Service Insurance Co.,* 546 S.W.2d 57, 61 (Tx.1976).

This argument, however, is largely irrelevant to the present case. Admittedly, the sovereign was immune from suit early in

the history of our safety responsibility statutes. *See* Laws 1953, p. 569. Sovereign immunity, however, was abrogated in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), and, then, re-enacted with certain exceptions by our legislature. 537.600 *et seq.* RSMo. (1978). Under this legislation, the sovereign was no longer immune from suits for injuries resulting from the negligent operation of motor vehicles by public employees, while acting within the scope of their employment. § 537.600.1(1). Our Supreme Court interpreted this legislation to mean that sovereign immunity is waived in these vehicular accidents only to the extent the public entity had liability insurance to cover claims as they arose. *Bartley v. Special School Dist. of St. Louis City*, 649 S.W.2d 864, 870 (Mo. banc 1983). Thus, even at the time of the accident here in 1982, the insured municipality here was no longer immune. More important, perhaps, in 1985, our legislature made its original intention crystal clear by amending § 567.600 to remove sovereign immunity in these vehicular accident cases regardless of the existence of liability coverage. § 537.600.2 RSMo. (Supp.1987).

To me, this legislative history means that after the *Jones* case, our legislature no longer intended our corporate political entities to be protected by sovereign immunity in the designated vehicular accident cases. Given this intent, I see no substantive reason to justify sovereign exemption from our safety responsibility statutes, and, certainly, insofar as mandatory uninsured motor vehicle coverage is concerned, I see no real or, even, ostensible reason to treat government vehicles any differently than any other corporate vehicles. In short, the complete exclusion of government owned vehicles by defendant from its uninsured motor vehicle coverage cannot be justified.

For these reasons, I concur with the result reached by the majority.