Pebble J. EATON, Plaintiff–Respondent,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

No. 18085.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 11, 1993.

Motion for Rehearing and/or Transfer Denied March 2, 1993.

Application to Transfer Denied April 20, 1993.

Dan L. Birdsong, Charles Bennett, Thomas, Birdsong & Clayton, P.C., Rolla, for defendant-appellant.

Mark Turley, Williams, Robinson, Turley & White, Rolla, for plaintiff-respondent.

GARRISON, Judge.

Plaintiff (Respondent) filed a two-count petition against State Farm (Appellant). Count I sought a declaratory judgment establishing coverage under the uninsured motorist and underinsured motorist provisions of a State Farm policy.[1] Jury was waived and the case was submitted pursuant to a Stipulation of Fact which provided, in pertinent part, that: plaintiff was injured in a one-car accident on February 15, 1987; the car belonged to plaintiff's parents, was being used with their permission, and was being driven by plaintiff's husband who was then living with her; the car was covered by a policy issued by State Farm to plaintiff's parents; and plaintiff's husband had no other liability insurance applicable to his operation of the vehicle.

Plaintiff's original claim was under State Farm's liability coverage based upon the negligence of her husband. State Farm, however, denied coverage based on the "household exclusion" which provided that:

THERE IS NO COVERAGE:

. . . .

2. FOR ANY BODILY INJURY TO:

. . . .

(c) Any insured or any member of an insured's family residing in the insured's household.[2]

---

1. Count II was plaintiff's claim for damages under the uninsured and underinsured coverages of the State Farm policy. A separate trial of Count II was ordered pursuant to Rule 66.02, Missouri Rules of Court (1992).

2. As a result of the Motor Vehicle Financial Responsibility Law (§§ 303.010–370, RSMo 1986, which took effect July 1, 1987), the Missouri Supreme Court has declared "household exclusion" clauses void with respect to the mandatory limits of automobile liability insurance required by § 303.190.2, RSMo 1986. *Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479 (Mo.banc 1992). The accident which is the subject of this suit occurred prior to the effective date of that statute. Therefore, the parties agree that under the holding of *American Family Mut. Ins. Co. v. Ward,* 789 S.W.2d 791 (Mo.banc

Plaintiff then made a claim against State Farm under its uninsured motorist and underinsured motorist coverages.[3]

State Farm's policy provided "uninsured motor vehicle" coverage which would "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle" on the condition that the "bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." Plaintiff claimed that the "uninsured motor vehicle" coverage applied because, based on State Farm's denial of liability under its liability coverage, the motor vehicle was therefore uninsured as to her claim.

The State Farm policy contained the following definition of an uninsured motor vehicle:

Uninsured Motor Vehicle—means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

....

b. insured or bonded for bodily injury at the time of the accident; but

....

(2) The insuring company denies coverage or is or becomes insolvent;

....

An uninsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

State Farm denied liability under the "uninsured motor vehicle" coverage on the theory that the vehicle was not an "uninsured motor vehicle" under the policy definition.

The trial court, in its Findings of Fact and Conclusions of Law, found that plaintiff was an insured person under State Farm's uninsured motorist[4] coverage because she was occupying the car while it was being used with the consent of the owners; the accident was caused by the negligence of plaintiff's husband and such negligence was the direct and proximate cause of plaintiff's injuries; plaintiff's husband was not insured under any liability insurance that would apply to plaintiff's claim against him; the car was an "uninsured motor vehicle" within the meaning of State Farm's policy because its use "was not insured for bodily injury liability to plaintiff"; the exception of a vehicle "insured under the liability coverage of this policy" from the definition of an "uninsured motor vehicle" did not apply to the subject vehicle because its use was not insured for bodily injury to plaintiff under the liability coverage; plaintiff's claims were covered under the uninsured motorist coverage of the policy; "it is at least arguable that the language of the policy's uninsured motor vehicle exception is ambiguous" as applied to plaintiff's situation and should be construed against State Farm; and the uninsured motor vehicle exception from the definition of an "uninsured motor vehicle" was contrary to public policy and, therefore, void. State Farm appeals from the judgment which incorporated these findings.[5]

■ In reviewing a declaratory judgment, the appellate court is to sustain the decree or judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976); and *Abco Tank and Mfg. Co. v. Federal Ins. Co.*, 550 S.W.2d 193, 197 (Mo.banc 1977). Here, we believe the law was erroneously applied, requiring that the judgment be reversed.

1990), the "household exclusion" is valid and enforceable in this case. See also, *Viessman v. Allstate Ins. Co.*, 825 S.W.2d 349 (Mo.App.1992).

**3.** The matter of underinsured motorist coverage is not at issue here because there is no appeal from the trial court's finding that it did not apply.

**4.** The terms "uninsured motorist" and "uninsured motor vehicle" are sometimes used interchangeably but refer to protection against "owners or operators of uninsured motor vehicles" under § 379.203, RSMo 1978. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 144 (Mo.banc 1980).

**5.** The judgment was designated final for purposes of appeal.

The argument that denial of liability coverage because of the "household exclusion" thereby entitles the insured to uninsured motorist coverage is not unique. Numerous cases have rejected that contention where, as here, the insured vehicle was not an "uninsured motor vehicle" under the policy definition of that term. *Harrison v. MFA Mut. Ins. Co., supra; Hussman v. Government Employees Ins. Co.,* 768 S.W.2d 585 (Mo.App.1989); *McEwen v. Menees,* 680 S.W.2d 414 (Mo.App.1984); *Hoerath v. McMahan,* 669 S.W.2d 281 (Mo.App. 1984); and *Brannon v. Security Mut. Cas. Co.,* 610 S.W.2d 315 (Mo.App.1980). Of similar import is *Zink v. Allis,* 650 S.W.2d 320 (Mo.App.1983), arriving at the same result from application of a "fellow-employee" exclusion. See also, *Truck Ins. Exchange v. Gilliham,* 659 S.W.2d 16, 17 (Mo.App.1983).

The controlling authority on which each of those cases was decided is *Harrison v. MFA Mut. Ins. Co., supra.* The *Harrison* case involved a one-car accident and the insurer's denial of liability coverage under the "household exclusion." Like the instant case, MFA denied plaintiff's claim under the uninsured motorist coverage because the policy provided that the term "uninsured highway vehicle" excluded an "insured automobile." (Here, the exception was described as a vehicle "insured under the liability coverage of this policy.") In *Harrison, supra,* the Supreme Court held that the uninsured motorist coverage did not apply. The same reasoning applies here.

The significance of an insurance policy's exclusion of a vehicle "insured under the liability coverage" from the definition of an "uninsured motor vehicle" was recently underscored by this court in *Viessman v. Allstate Ins. Co., supra.* In that case plaintiff was a passenger in a vehicle operated by her husband. As in the instant case, the insurer denied coverage based upon the "household exclusion" and plaintiff then claimed entitlement to uninsured motorist coverage. Allstate attempted to avoid that coverage by relying on the *Harrison, Hussman, McEwen, Hoerath* and *Brannon* cases, *supra.* The court found

coverage, however, because the Allstate policy, unlike the policies in those cases and the instant case, did not contain language excluding an insured automobile from the policy definition of an uninsured vehicle. Unlike the *Viessman* case, the facts here are consistent with those in the *Harrison* case and its progeny.

Failure to give effect to the clear policy language excluding the vehicle "insured under the liability coverage of this policy" from the definition of "uninsured motor vehicle" would be to effectively abrogate the "household exclusion." As indicated earlier in this opinion, the parties agree that this exclusion applies here. Thus, a holding that the insured vehicle was not excluded from the definition of "uninsured motor vehicle" (in contravention of the policy language) would result in liability coverage being excluded under the "household exclusion" and the uninsured motorist coverage nevertheless stepping in and providing the excluded coverage. At least two courts have found this or a similar result to be unacceptable in view of the fact that there is a rational basis for such exclusions. *Harrison v. MFA Mut. Ins. Co., supra,* and *Zink v. Allis, supra.*

The thrust of plaintiff's argument is that the use of the vehicle was not insured for bodily injury liability *to her* and, therefore, from her perspective it was, in fact, an uninsured vehicle. This contention is based on the trial court's finding that the policy's exclusion of a vehicle "insured under the liability coverage of this policy" did not apply "because its use at the time of the accident was not insured for bodily injury to plaintiff, Pebble Eaton, under the liability coverage of the policy."

The same argument is implicit in other cases which denied uninsured motorist coverage where the liability coverage did not apply by reason of a policy exclusion (whether it be the "household exclusion" or "fellow-employee" exclusion) and the definition of uninsured motor vehicle excluded a vehicle insured under the policy. In fact, plaintiff's position is essentially the same as that taken in the dissenting opinion to *Harrison v. MFA Mut. Ins. Co., supra.*

There, the argument was made that the uninsured motorist coverage should apply because "the auto was uninsured *as to her*." (Emphasis ours.) This position was obviously rejected by the majority opinion in *Harrison*. It was also rejected in *Hoerath v. McMahan, supra,* a case very similar to the instant case, where plaintiffs argued that because they were excluded from liability coverage under the "household exclusion," the vehicle was "uninsured *as to them*" (emphasis ours) and they should have been allowed to recover under the uninsured motor vehicle provisions of the policy. The *Hoerath* court held, at page 283, relying on *Harrison v. MFA Mut. Ins. Co., supra,* that "the household exclusion, combined with the fact that the insured vehicle could not also be an 'uninsured motor vehicle' under the policy, prevented plaintiffs from recovering from their insurer." The same argument was rejected in *Zink v. Allis, supra.*

Plaintiff, in arguing that the vehicle was not insured as to her claim and thus should not be excluded from the definition of "uninsured motor vehicle," relies primarily on three cases: *Marvin v. State Farm Mut. Auto. Ins. Co.,* 722 F.Supp. 565 (E.D.Mo.1989); *Keeler v. Farmers and Merchants Ins. Co.,* 724 S.W.2d 307 (Mo. App.1987); and *Cameron Mut. Ins. Co. v. Chitwood,* 609 S.W.2d 492 (Mo.App.1980). The *Keeler* case, *supra,* is distinguishable from the case at bar. It involved a two-car accident, did not involve application of the "household exclusion," and did not involve the issue of whether the definition of uninsured motor vehicle could, by its terms, exclude the insured vehicle. It merely held that the intentional act of the driver of an uninsured vehicle will not prevent uninsured motor vehicle coverage from applying.

The *Cameron Mut. Ins. Co.* case, *supra,* did not involve an issue of whether a policy exclusion would trigger uninsured motorist coverage or whether the involved vehicle met the definition of an "uninsured motor vehicle." Rather, it involved a situation where liability coverage did not apply because the driver was operating the car without permission. Thus, the liability coverage would not have applied under any scenario.

Finally, the case of *Marvin v. State Farm Mut. Auto. Ins. Co., supra,* cited by plaintiff involved a situation where there was a specific endorsement excluding coverage as to the particular driver involved in that accident. The court recognized, but specifically distinguished, the *Harrison v. MFA Mut. Ins. Co., McEwen v. Menees,* and *Hoerath v. McMahan* cases, *supra,* from the facts of that case wherein the driver was not covered under any circumstance. That court did find, however, that the car was uninsured because the "use" by the driver was not insured. Plaintiff apparently would apply that case to support her claim that, in the instant case, uninsured motorist coverage should apply, regardless of the exclusionary language of the definition, because her husband's "use" of the subject vehicle was not insured as to her claims. The *Marvin* court, however, acknowledged, by distinguishing the *Harrison, McEwen* and *Hoerath* cases, that the situation there was distinguishable from the facts which exist here. We agree, and hold that the subject vehicle was not an "uninsured motor vehicle" under the policy definition.

■ State Farm also claims the trial court erred in finding that the policy provision excluding the vehicle "insured under the liability coverage" from the definition of an "uninsured motor vehicle" was ambiguous and thus should be construed against it. As indicated, the trial court found that the exception did not apply here because the "household exclusion" prevented the liability coverage from applying to plaintiff's claim. The court found that if that language "can be construed to exclude coverage it can also reasonably be construed" as found by the court, and "thus, it is at least arguable that the language of the policy's uninsured motor vehicle exception is ambiguous as applied to plaintiff Pebble Eaton's situation...." Assuming this amounts to a finding of "ambiguity," we disagree. Language in an insurance policy must be given its plain meaning even though it appears in the restrictive provi-

sions of the policy. *Harrison v. MFA Mut. Ins. Co., supra.* The *Harrison* case involved policy language significantly similar to the language involved here, and the Supreme Court found that it was not ambiguous. In fact, in language which is appropriate here, the Supreme Court said, at page 142:

We refuse to create an ambiguity under the policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which some might consider desirable but which is not otherwise permissible under the policy or the law.

To the same effect is *Thompson v. Parker,* 608 S.W.2d 415 (Mo.banc 1980), where the Supreme Court again followed *Harrison* and upheld similar policy language. We likewise hold that the pertinent policy language was not ambiguous.

■ In its last point, State Farm complains of the trial court's finding that the policy language in question is violative of public policy and, therefore, void. In its finding, the trial court referred to § 379.-203, RSMo 1986, and its purpose "to establish a level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." The contention that similar policy language violates public policy was also answered in the *Harrison v. MFA Mut. Ins. Co.* case, *supra.* There, the Supreme Court rejected the same contention, saying "... the provision of the policy that the term 'uninsured motor vehicle' shall not include an 'insured motor vehicle' does not contravene public policy as set by section 379.203, RSMo 1978, which requires liability policies to afford coverage to insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." *Id.* at 140. See also *Hussman v. Government Employees Ins. Co., supra, McEwen v. Menees, supra, Hoerath v. McMahan, supra,* and *Brannon v. Security Mut. Cas. Co., supra.*

In its Findings of Fact and Conclusions of Law, the trial court cited the cases of *Kuda v. American Family Mut. Ins. Co.,*

790 S.W.2d 464 (Mo.banc 1990); *Martin v. State Farm Mut. Auto. Ins. Co.,* 755 S.W.2d 638 (Mo.App.1988); and *Cook v. Pedigo,* 714 S.W.2d 949 (Mo.App.1986), in support of its conclusion that the exclusion from the definition of "uninsured motor vehicle" violated public policy. Each of those cases is distinguishable on the facts. The *Harrison* case, *supra,* is on point and controls here. We agree with State Farm that, under the controlling authority, the pertinent policy provisions are not void as against public policy.

By reason of the above, we hold that the trial court erroneously applied the law in holding that the subject vehicle was an "uninsured motor vehicle" under the definition of that term in the policy, and that the policy provision excluding a vehicle "insured under the liability provisions of this policy" from the definition of an uninsured motor vehicle was ambiguous or that it was against public policy and thereby void. The judgment of the trial court is, therefore, reversed and remanded for entry of a judgment in favor of State Farm on Count I of the petition.

MONTGOMERY, P.J., and PREWITT, J., concur.