United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-3153

_____

State Farm Mutual Automobile        *
Insurance Company,                  *
                                    *
                  Appellee,         *
                                    *  Appeal from the United States
            v.                      *  District Court for the
                                    *  Eastern District of Missouri.
Andrew Shahan, Nancy Hunolt,        *
Leo Hunolt,                         *
                                    *
                  Appellants.       *

_____

Submitted: January 12, 1998

Filed: April 1, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and HANSEN, Circuit
      Judges.

_____

WOLLMAN, Circuit Judge.

        This appeal stems from a dispute over the terms of automobile insurance policies
issued by State Farm Mutual Automobile Insurance Company (State Farm) to Leo and
Nancy Hunolt. After Andrew Shahan made a claim for underinsured motorist coverage
under the policies, State Farm initiated this action seeking a declaration of non-

responsibility. The Hunolts and Shahan counterclaimed, alleging vexatious refusal to pay. The district court[1] entered summary judgment for State Farm. We affirm.

## I.

In 1991, Andrew Shahan sustained significant injuries in a single-vehicle accident while a passenger in a 1987 Chevrolet pickup driven by his half-brother. At the time of the accident, Shahan resided with his mother, Nancy Hunolt, and her husband, Leo. The pickup involved in the accident was owned by the Hunolts and was covered by an automobile insurance policy issued by State Farm. The Hunolts owned two other vehicles, a 1987 Oldsmobile and a 1956 Chevrolet, both of which were insured through State Farm. The policies for the three vehicles were identical. Each provided for $25,000 personal liability coverage. In addition, each provided for underinsured motorist coverage, with limits of $100,000 per person and $300,000 per occurrence. The Hunolts also carried an underinsured motorist umbrella policy that was issued by State Farm and had a policy limit of $1,000,000.

Shahan brought an action seeking damages for injuries sustained in the accident. This action resulted in a judgment for Shahan in the amount of $225,000. Because Shahan's half-brother was an authorized driver of the Hunolts' vehicle, he was insured under the liability portion of their policy. Consequently, State Farm paid Shahan $25,000 under the personal liability coverage in partial satisfaction of the judgment.

Shahan thereafter filed a claim with State Farm seeking satisfaction of the remainder of his judgment under the underinsured motorist provisions in the Hunolts' policies. State Farm denied Shahan's claim and initiated this proceeding. The district court concluded that Shahan was not entitled to underinsured motorist coverage under

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

the terms of the policies and that State Farm had not acted vexatiously in refusing to pay. Accordingly, the court entered summary judgment in favor of State Farm. Shahan now appeals this ruling. The parties agree that the law of Missouri applies in this diversity action. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## II.

We review a grant of summary judgment de novo, applying the same standard as that applied by the district court. See Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997), cert. denied, 1997 WL 799884 (1998). We will affirm a grant of summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See id.

In arguing that the district court erred in granting summary judgment for State Farm, Shahan contends that: (1) the language excluding coverage under the policy covering the 1987 Chevrolet pickup violates public policy; (2) the language excluding coverage under the policies covering the 1987 Oldsmobile and the 1956 Chevrolet is ambiguous; (3) a genuine factual dispute exists regarding the precise umbrella policy in effect at the time of the accident, precluding summary judgment; and (4) the district court misapplied the law in assessing his counterclaim for vexatious refusal to pay.

### The 1987 Chevrolet Pickup

The policy insuring the Hunolts' 1987 Chevrolet pickup promises to pay "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." An underinsured vehicle is defined as:

> [a motor vehicle] whose limits of liability for bodily injury
> liability:

        a. are less than the amount of the insured's damages; or

        b. have been reduced by payments to persons other than the insured to less than the amount of the insured's damages.

In addition, the policy contains the following exclusion:

> An underinsured motor vehicle does not include a land motor vehicle:
>    1. insured under the liability coverage of this policy.

As the district court noted, this language unambiguously states that a motor vehicle insured under the policy is not an underinsured motor vehicle. Nevertheless, Shahan contends that the exclusion violates public policy because it contravenes the letter and spirit of Missouri's Motor Vehicle Financial Responsibility Law. See Mo. Ann. Stat. § 303.010 et seq. (West 1994). This argument, however, is premised upon a fundamental misunderstanding of the nature and purpose of underinsured motorist coverage.

Shahan points to Mo. Ann. Stat. § 303.190, which requires that a liability policy be carried on every motor vehicle owned, maintained, or used in the United States or Canada. This statute reflects a clear public policy interest in ensuring that all motor vehicles carry liability coverage. The Missouri Code contains no statute requiring underinsured motorist coverage, however, nor is such coverage mandated by Missouri public policy. See Rodriguez v. General Acc. Ins. Co. of America, 808 S.W.2d 379, 383 (Mo. 1991) (en banc). Rather, underinsured motorist coverage is entirely optional and is governed only by the law of contracts. See American Family Mut. Ins. Co. v. Turner, 824 S.W.2d 19, 21 (Mo. Ct. App. 1991). Shahan nevertheless argues that because an insured's underinsured motor vehicle coverage will be rendered inapplicable whenever the insured carries the liability coverage required by section

-4-

303.190, the exclusionary language in question is incompatible with the policy concerns expressed in section 303.190.

Shahan's argument is misconceived. The policy's exclusionary clause states simply that the vehicle insured under the liability portion of that same policy will not be considered an underinsured motor vehicle. This exclusion precludes coverage where, as here, a passenger is injured in a single vehicle accident while riding in the insured vehicle. Shahan's assertion that coverage will inevitably be precluded in every imaginable scenario is simply false. Indeed, the policy at hand is specifically tailored to provide coverage in the situation ordinarily contemplated by purchasers of underinsured motorist policies. Underinsured motor vehicle coverage is designed to pay "for losses incurred because another negligent motorist's coverage is insufficient to pay for the injured person's actual losses." Hopkins v. American Economy Ins. Co., 896 S.W.2d 933, 935 (Mo. Ct. App. 1995). The typically envisioned situation arises when the driver of one vehicle is injured due to the negligence of another driver. If the second driver's liability coverage is insufficient to compensate for the first driver's injuries, the first driver may recover under his own underinsured motor vehicle policy. Nothing in the policy at hand prevents payment in such a situation. Public policy is not contravened merely because Shahan's claim falls within the narrow class of claims for which coverage has been precluded.

The Missouri Court of Appeals has concluded that language identical to that found in the Hunolts' policy does not violate public policy. See Eaton v. State Farm Mut. Auto. Ins. Co., 849 S.W.2d 189, 193-94 (Mo. Ct. App. 1993). Shahan contends that Eaton is distinguishable because it involved uninsured motorist coverage rather than underinsured motorist coverage. This distinction, however, actually cuts against Shahan's position. Missouri statutorily requires uninsured motorist coverage. See Mo. Ann. Stat. § 379.203 (West 1991). This requirement reflects a strong public policy interest in preserving uninsured motorist coverage. No corresponding statutory requirement or policy interest exists in favor of underinsured motorist coverage. See

<u>Rodriguez</u>, 808 S.W.2d at 383. We may assume that Missouri courts would be even less receptive to exclusions on uninsured coverage, which is mandated by statute, than to those on underinsured coverage, which is purely optional. Accordingly, we conclude that the language in the Hunolts' policy does not violate Missouri public policy.

## The 1987 Oldsmobile and the 1956 Chevrolet

Shahan also argues that he is entitled to underinsured motorist coverage under the terms of the policies covering the 1987 Oldsmobile and the 1956 Chevrolet. The district court held that the following language precluded recovery:

> There is no coverage under coverage W [underinsured motorist] for bodily injury to an insured:
>
> 1. While occupying a motor vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy.

Because Shahan was occupying a vehicle owned by his mother and not insured under either the 1987 Oldsmobile policy or the 1956 Chevrolet policy, the district court concluded that coverage was precluded as a matter of law. Shahan disputes this conclusion, contending that the above-referenced language is ambiguous under Missouri law.

Where the language of an insurance policy is unambiguous, it should be enforced as written. See <u>Peters v. Employer's Mut. Cas. Co.</u>, 853 S.W.2d 300, 302 (Mo. 1993) (en banc). The language should be accorded its plain meaning. This is true even where the language appears within the restrictive provisions of a policy. See <u>Eaton</u>, 849 S.W.2d at 193-94. However, if language is ambiguous, it should be construed in favor of the insured and against the insurer. See <u>Peters</u>, 853 S.W.2d at 302. Language is

ambiguous if it is reasonably open to different constructions. See Robin v. Blue Cross Hosp. Serv., Inc., 637 S.W.2d 695, 698 (Mo. 1982) (en banc).

Shahan contends that the phrase "a motor vehicle owned by you, your spouse, or any relative if it is not insured for this coverage under this policy" is subject to more than one reasonable construction. Specifically, he asserts that the word "it" could reasonably refer to either "motor vehicle" or to "you, your spouse, or any relative." We cannot agree. In this context, the word "it" clearly and unequivocally refers to "motor vehicle." Any other interpretation would defy the most fundamental principles of construction. We are neither obliged nor permitted to entertain novel interpretations of insurance policies so as to "create an ambiguity under the policy language where none exists." Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 142 (Mo. 1980) (en banc). Instead, we must give effect to the plain language of the policy. See id. Here, that plain language unambiguously precludes recovery.

**The Umbrella Policy**

State Farm contends that it delivered to the Hunolts a copy of an amended umbrella policy prior to the accident and that this policy was in effect when the accident occurred. Shahan, on the other hand, claims that the Hunolts never received the amended policy and that the previous umbrella policy was therefore in effect. As a consequence of this dispute, Shahan contends that a genuine issue of material fact existed regarding the precise umbrella policy in effect and that summary judgment was inappropriate.

Shahan's argument is without merit. While this dispute might present a genuine issue of fact, the fact is simply not material. Both umbrella policies contain identical clauses stating that underinsured motorist coverage is available "in accordance with the terms and conditions of your underlying Underinsured Motorist Coverage." This clause expressly incorporates the same terms and conditions that must be met in order to

obtain payment under the underlying policies. Thus, the terms and conditions that preclude coverage under the underlying policies act as a barrier to recovery regardless of which umbrella policy was in effect. Shahan argues that the phrase "in accordance with" should not be strictly interpreted and should instead be read to require that the umbrella policy be interpreted "in harmony with" the underlying policies. This proposed interpretation is unnecessarily vague and lacks any ascertainable standards. It also is incompatible with our duty to give effect to the clear and unambiguous meaning of the umbrella policy. See Peters, 853 S.W.2d at 302.

Shahan argues, further, that the umbrella policy should be interpreted to allow coverage because the underlying terms that it incorporates are ambiguous and against public policy. This argument is essentially a reiteration of arguments we have already rejected. As we have explained, the underlying policies are unambiguous and do not violate public policy. Thus, we decline Shahan's indirect invitation to revisit the language of the underlying policies.

**Vexatious Refusal to Pay**

Finally, Shahan contends that the district court erred in granting summary judgment for State Farm on his counterclaim seeking damages for vexatious refusal to pay under Mo. Ann. Stat. § 375.420 (West 1991). Section 375.420 is penal in nature and therefore must be strictly construed. See Mears v. Columbia Mut. Ins. Co., 855 S.W.2d 389, 394 (Mo. Ct. App. 1993). Under section 375.420, an insured can recover damages for vexatious refusal to pay insurance proceeds by demonstrating "that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. 1984) (en banc). Even where a genuine litigable issue exists, vexatious refusal may be found if "there is evidence the insurer's attitude was vexatious and recalcitrant." Id. at 710. This determination must be made by

viewing the facts as they appeared at the time of the refusal to pay. <u>See</u> <u>Storhaug v. State Farm Fire & Cas. Co.</u>, 747 F.2d 443, 444 (8th Cir. 1984).

Shahan's vexatious refusal claim is without merit. As we have explained, State Farm's refusal to pay was based on the clear and unambiguous language of the insurance policies. Therefore, it was clearly not without reasonable cause. Furthermore, Shahan fails to identify any evidence that could conceivably support a finding that State Farm's attitude was "vexatious and recalcitrant." Absent such evidence, the district court's grant of summary judgment was proper.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.