**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Respondent,**

v.

**Linda D. BRIDGES, Defendant–Appellant,**

**and**

**William J. Bridges and Elton R. Markham, Defendants.**

No. 22793.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 14, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied Nov. 4, 1999.

Application to Transfer Denied Dec. 21, 1999.

Greggory D. Groves, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellant.

Kevin M. FitzGerald, Taylor, Stafford, Woody, Clithero & FitzGerald, LLP, Springfield, for respondent.

CROW, Presiding Judge.

On June 28, 1997, Linda D. Bridges ("Linda") was a passenger in a pickup operated by Elton R. Markham ("Markham"). Linda's husband, William J. Bridges ("William"), drove a Ford automobile owned by him and Linda into collision with the pickup, injuring Linda and Markham.

On that date, policy number 567 3843–F29–25A ("Policy 567") issued by State Farm Mutual Automobile Insurance Company ("State Farm") was in force. The named insureds in Policy 567 were Linda and William; the "Described Vehicle" on the "Declarations Page" was the Ford.

On October 28, 1997, State Farm commenced this litigation by filing a petition for declaratory judgment against Linda, William and Markham. State Farm sought a declaration that Policy 567 provided (1) no liability coverage for William for any claim against him arising from the collision, and (2) no uninsured motor vehicle coverage for any claim by Linda arising from the collision.

William was served with summons but filed no responsive pleading.

The trial court's docket sheet shows Markham filed an answer.[1]

Linda filed an answer and a three-count counterclaim. Count I sought a declaration that Policy 567 provided uninsured motor vehicle coverage for any claim by her arising from the collision. Count II sought judgment against State Farm for $25,000 under the uninsured motor vehicle coverage as damages for bodily injuries she allegedly received in the collision. Count III sought statutory penalties and attorney fees from State Farm for its allegedly vexatious refusal to pay her uninsured motor vehicle benefits.

Thereafter, State Farm, Linda and Markham, by their respective lawyers, entered into a stipulation of facts. The stip-

---

1. Markham's answer is not in the record handed this court.

ulation provided, *inter alia,* that William's conduct in driving the Ford into collision with the pickup "was an intentional act and not accidental," hence State Farm "denied coverage [under Policy 567] on all liability claims against William."[2]

Based on the stipulation, State Farm moved for summary judgment in its favor on its petition, and Linda moved for summary judgment in her favor on Counts I and III of her counterclaim.

The trial court granted State Farm's motion, declaring Policy 567 provided (1) no liability coverage for William for any claim against him arising from the collision, and (2) no uninsured motor vehicle coverage for any claim by Linda arising from the collision. Consistent with those rulings, the trial court denied all three counts of Linda's counterclaim.

Linda brings this appeal from that judgment. Her sole point relied on attacks only the ruling regarding uninsured motor vehicle coverage.

■ The provision in Policy 567 creating uninsured motor vehicle coverage reads, in pertinent part:

"[State Farm] will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* . . .

*Uninsured Motor Vehicle*—means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

. . .

b. insured . . . for bodily injury liability at the time of the accident; but

. . .

(2) the insuring company denies coverage. . . .

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of *you, your spouse* or any *relative* . . . ."

(Italics in original.)

The above-quoted provision is designated "Coverage U" in Policy 567. This opinion henceforth uses that designation.

Coverage U states, *inter alia,* that the term uninsured motor vehicle means a motor vehicle, the use of which is insured for bodily injury liability at the time of the accident, but the insuring company denies coverage. For convenience, this opinion henceforth refers to that pronouncement as "The Definition."

When State Farm denied liability coverage for William, the Ford obviously became an uninsured motor vehicle under The Definition. Consequently, if Coverage U ended with The Definition, State Farm would undeniably be liable to Linda under Coverage U.

However, after The Definition sets forth what an uninsured motor vehicle is, Coverage U endeavors to describe two situations where a vehicle that meets The Definition is nonetheless not an uninsured motor vehicle. The first situation is where the vehicle is "insured under the liability coverage of [Policy 567]." For convenience, this opinion henceforth refers to that proviso as "Exception 1." The second situation is where the vehicle is "furnished for the regular use of you, your spouse or any relative."[3] For convenience, this opinion henceforth refers to that proviso as "Exception 2."

Linda's point relied on reads:

"The trial court erred in granting State Farm's motion for summary judg-

---

**2.** Policy 567 obligates State Farm to pay damages which an insured becomes legally liable to pay because of bodily injury to others caused by *accident* resulting from use of the Ford.

**3.** Policy 567 defines "you" as "the named insured or named insureds shown on the declarations page."

ment ... and in dismissing Linda Bridges' counterclaim on the basis that the exclusions in the State Farm uninsured motor vehicle policy prevented Linda Bridges from being entitled to uninsured motor vehicle coverage because Linda Bridges was legally entitled to uninsured motor vehicle coverage in that:

A. the vehicle operated by William Bridges was an uninsured motor vehicle; and

B. the exclusions contained in State Farm's uninsured motorist vehicle policy are against public policy, and in particular:

1. the limitation defining an uninsured motor vehicle as one which is not 'insured under the liability coverage of this policy' is void against public policy; and

2. the limitation that an uninsured motor vehicle does not include a vehicle furnished for the regular use of Linda Bridges or her spouse is also void as being against public policy."

This court first addresses contention "A" in the above point. From the argument in Linda's brief, this court divines she believes there is an ambiguity when The Definition is read in conjunction with Exception 1. Linda's hypothesis, as this court comprehends it, is that the Ford is an uninsured motor vehicle under The Definition, but not an uninsured motor vehicle under Exception 1.

Citing *Harrison v. Tomes*, 956 S.W.2d 268, 270[5] (Mo. banc 1997), Linda correctly asserts that where an ambiguity exists in an insurance policy, it should be interpreted in favor of providing coverage. Linda refers to The Definition as a "coverage clause" and to Exception 1 as an "exclusion clause." Relying on *Harrison, id.* at 270, Linda insists coverage clauses are read broadly, while exclusion clauses are read narrowly so as to afford the greatest possible coverage. Consequently, reasons Linda, this court should construe the ambiguity in her favor and hold the Ford was an uninsured motor vehicle.

■ Language is ambiguous if it is reasonably open to different constructions. *Krombach v. Mayflower Insurance Co., Ltd.*, 827 S.W.2d 208, 210[2] (Mo. banc 1992). The test is whether the language, in the context of the entire agreement, is susceptible of more than one construction, giving words their plain meaning as understood by a reasonable person. *Stolba v. Vesci*, 909 S.W.2d 706, 708[9] (Mo.App. S.D.1995). Ambiguous provisions of an insurance policy are construed against the insurer. *Krombach*, 827 S.W.2d at 210[3].

In *Eaton v. State Farm Mutual Automobile Insurance Co.*, 849 S.W.2d 189 (Mo. App. S.D.1993), a passenger in a one-vehicle accident sought a declaration that a claim by her for bodily injury was covered by the uninsured motor vehicle provision in a State Farm policy. *Id.* at 190. The provision was identical to Coverage U in Policy 567. *Id.* at 191.

The vehicle in *Eaton* was owned by the passenger's parents (the named insureds) and was being driven—with their permission—by the passenger's husband when the mishap occurred. *Id.* at 190. State Farm denied liability coverage for the driver on the basis of a "household exclusion" in the policy.[4] *Id.* at 190–91.

4. The accident in *Eaton* occurred before the effective date of the Motor Vehicle Financial Responsibility Law ("MVFRL"), §§ 303.010–370, RSMo 1986, which took effect July 1, 1987. *Id.* at 190. The parties in *Eaton*, mindful of *American Family Mutual Insurance Co. v. Ward*, 789 S.W.2d 791 (Mo. banc 1990), agreed the household exclusion was valid. *Eaton*, 849 S.W.2d at 190–91 n. 2. In *Halpin v. American Family Mutual Insurance*

*Co.*, 823 S.W.2d 479 (Mo. banc 1992), the court held the MVFRL bars household exclusions from nullifying liability coverage in the mandatory amounts required by § 303.190.2(2)—$25,000 for bodily injury to or death of one person in any one accident; $50,000 for bodily injury to or death of two or more persons in any one accident; $10,000 for property damage in any one accident—but

The passenger in *Eaton* maintained that inasmuch as there was no liability coverage because of the household exclusion, the vehicle was an uninsured motor vehicle insofar as her bodily injury claim was concerned. *Id.* at 191.

This court rejected the passenger's contention, explaining:

> "The argument that denial of liability coverage because of the 'household exclusion' thereby entitles the insured to uninsured motorist coverage is not unique. Numerous cases have rejected that contention where, as here, *the insured vehicle was not an 'uninsured motor vehicle' under the policy definition of that term.*"

*Id.* at 192[2] (emphasis added).

As noted earlier, the uninsured motor vehicle provision in the State Farm policy in *Eaton* was identical to Coverage U in Policy 567. In *Eaton*, as in the instant case, the injured party maintained the uninsured motor vehicle provision was ambiguous in that the vehicle met the definition of an uninsured motor vehicle (because State Farm denied liability coverage), yet the policy said the vehicle was not uninsured because it was insured under the liability coverage of the policy. *Id.* at 193.

This court held there was no ambiguity, stating:

> "*Harrison* [*v. MFA Mutual Insurance Co.*, 607 S.W.2d 137 (Mo. banc 1980),] involved policy language significantly similar to the language involved here, and the Supreme Court found that it was not ambiguous. In fact, in language which is appropriate here, the Supreme Court said, at page 142:
>
> > We refuse to create an ambiguity under the policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which some might consider de-

sirable but which is not otherwise permissible under the policy or the law."
*Eaton*, 849 S.W.2d at 194.

Inasmuch as the uninsured motor vehicle provision in the State Farm policy in *Eaton* was identical to Coverage U in Policy 567, *Eaton* is precedent that there is no ambiguity when The Definition in Policy 567 is read in conjunction with Exception 1 in Policy 567.

Linda insists *Eaton* is not controlling on the ambiguity issue because "the accident in *Eaton* occurred prior to the effective date of the MVFRL."[5] That notion is without merit. The ambiguity issue raised by the passenger in *Eaton* was identical to the ambiguity issue raised by Linda in the instant case, i.e., Coverage U in Policy 567 is ambiguous in that the Ford is an uninsured motor vehicle under The Definition because State Farm denied liability coverage, but the Ford is not an uninsured motor vehicle under Exception 1 because the Ford is insured under the policy's liability coverage. The MVFRL does not affect the *ambiguity* issue, as the uninsured motor vehicle provision in *Eaton* mirrored Coverage U in Policy 567. Because the language was held unambiguous in *Eaton*, it cannot be ambiguous in Policy 567.

This court adheres to *Eaton* and holds a reasonable person would understand that where The Definition in Coverage U of Policy 567 classifies a vehicle as an uninsured motor vehicle, Exception 1 cancels that classification if the vehicle is insured under the liability coverage of Policy 567. All Linda has to do is look at the declarations page of Policy 567 to see whether the Ford is identified there as a vehicle insured under the liability coverage of Policy 567. Because the Ford is so identified, it *is not an uninsured motor vehicle, and no* reasonable person would conclude otherwise. Contention "A" in Linda's point relied on is without merit.

---

permits household exclusions to nullify liability coverage exceeding those amounts.

**5.** Footnote 4, *supra.*

This court next addresses part "1" of contention "B." There, Linda insists Exception 1 in Coverage U is "void against public policy."

One of the cases Linda relies on is *Gibbs v. National General Insurance Co.,* 938 S.W.2d 600 (Mo.App. S.D.1997). It is inapposite, as it involved a provision that excluded a vehicle from "uninsured motorist coverage" if the vehicle was "[o]wned by or furnished or available for the regular use of you or any 'family member'." *Id.* at 602. That provision is entirely different than Exception 1 in Coverage U of Policy 567.

Linda also relies on *Martin v. State Farm Mutual Automobile Insurance Co.,* 755 S.W.2d 638 (Mo.App. E.D.1988). It is likewise inapposite. There, a worker employed by a municipality was injured on the job when a fellow employee drove a municipally-owned truck over the worker's legs. *Id.* at 639. The municipality's liability insurance policy on the truck excluded coverage for bodily injury to a municipal employee arising out of and in the course of his employment. *Id.* The driver had no liability insurance. *Id.* Consequently, the worker sued under the "uninsured motorist provision" of his own automobile insurance policy. *Id.* That provision declared an uninsured motor vehicle did not include one owned by any government or any of its political subdivisions or agencies. *Id.*

The appellate court held the exclusion void because it violated § 379.203.1, RSMo 1979. *Id.* at 640[2]. The exclusion in *Martin,* like the one in *Gibbs,* is entirely different than Exception 1 in Coverage U of Policy 567.

*Eaton,* 849 S.W.2d 189, is squarely in point on part "1" of Linda's contention "B." In *Eaton,* the trial court, citing § 379.203, RSMo 1986, found a policy provision identical to Exception 1 in Coverage U of Policy 567 violative of public policy and therefore void. *Id.* at 191, 194. This court reversed the trial court and held the provision valid. *Id.* at 194[5].

In concluding that *Eaton* governs part "1" of Linda's contention "B," this court is mindful that the accident in *Eaton* occurred before the effective date of the MVFRL.[6] This court fails to see how that circumstance impairs the precedential value of *Eaton,* as the statute involved in *Eaton,* § 379.203, RSMo 1986, is not part of the MVFRL. Applying *Eaton, id.* at 194[5], this court finds no merit in part "1" of Linda's contention "B."

Having reached that conclusion, this court need not address part "2" of Linda's contention "B," for even were part "2" meritorious it would not change the outcome of this appeal. This court has already held Exception 1 in Coverage U of Policy 567 valid, hence the Ford would not be an uninsured motor vehicle under Coverage U even were Exception 2 void.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

